All rise. The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right, thank you. Be seated. Mr. Hopwood, whenever you're ready. Good morning, and may it please the Court. Three times the Court in Mejia stated that the best way to harmonize reinstatement and asylum was to read reinstatement as a specific exception to the broad grant of asylum eligibility. But the Court is now confronted with a different statutory conflict between reinstatement and the asylum change circumstances provision. The Court should hold that the change circumstances provision is an exception to the reinstatement bar. That reading best harmonizes the statute. It gives each provision effect. It comports with the general specific canon of construction that the Court in Mejia found conclusive, and it avoids absurd results. Now in Mejia, the Court read reinstatement not as a broad ban of all relief, but as a specific exception to asylum eligibility, and basically slotted it into the same place as the three other procedural bars for people that are trying to seek asylum. And those include the safe country bar, the bar on someone who has not filed within a year of entry, and the bar on someone who has filed a first and unsuccessful petition. Under that view, taking that as your baseline, it makes the most sense to read the asylum change circumstances provision as the exception to the exception. And the reason why we think that is three reasons. One is that would give effect to change circumstances provision, which if you read reinstatement as a broad bar of all relief, you're basically wiping out a large part of that statute. Two, this asylum change circumstances provision is the more specific of the two provisions, especially if you follow the analysis in Mejia. Mejia said the more specific provision was the one that involved the smallest subset group of recipients of potential asylum relief. Here, you had asylum eligibility, which was the large group. And then the more general, more narrow and specific group of people that were seeking asylum under reinstated order of removal. And then our provision would be an even smaller subset, those that are under a reinstated order of removal and yet have changed circumstances that would normally allow them to seek asylum. Can I ask you a question? Just sort of a common sense question. It makes sense to me that you go to, you know, you didn't file within the original one year or you did file but your petition was rejected. It makes sense to think in terms of having an exception for changed circumstances because you didn't file because you didn't have a claim then or your claim was rejected because you didn't have a claim then. But the reinstatement bar seems different to me. And that seems like a punitive, and I don't mean that in a normative sense, but it's to punish the illegally reentered. And it's just not obvious to me why the same rationale for having a changed circumstance exception doesn't seem to apply. Well, Your Honor, I don't think reinstatement can be read as broadly as the government wants you to. And there's a couple reasons for that. If you read reinstatement as barring changed circumstances claims and barring all relief altogether, you run into a bunch of problems. Not the least of which, if you're doing under Chevron Step 1 analysis, if you say reinstatement bars everything, then you're basically invalidating the government's three regulations. And so what I'd say is that reinstatement is not as broad as barring all and any relief and must be read more narrowly, especially because it's a procedural bar. This was not meant to be a substantive bar. That's what the Supreme Court said in Fernandez-Vargas. And so once you slot reinstatement in as a procedural bar to asylum eligibility, no different from any of the other three exceptions, it makes sense to then have the changed circumstances come behind that and say that is the exception to the reinstatement bar. Reinstatement was a procedural mechanism that was used to prevent relitigation of claims that were raised during the first order of removal. And it allows the government to not have to relitigate those claims. But my client never had an opportunity to raise an asylum claim in his first order of removal. And so reinstatement should not bar his claim. In the same way, it should not bar a claim of someone who comes into the country as a child with their parents, comes in illegally, is ordered removed, actually is removed, and then comes in 20 or 30 years later. It makes very little sense for reinstatement to bar that claim as well. Well, it's discretionary, right? Isn't that an argument that can be made to the Attorney General, I guess, as a person who would have the authority to not put this into reinstatement proceedings? Well, if you look at the reinstatement provision that the government has created, there is very little room for discretion there. The only discretion is the questions that they ask. Whether someone has a reinstated order of removal, whether the person that was left and then came back. But we don't see any discretion for IJ officials to say, oh, we're going to exercise discretion and take you out of reinstatement. And the reason why we know that is the government has created three exceptions by notice and comment rulemaking to allow exceptions to reinstatement. And those exceptions are CAT, withholding, and U visas. U visas, particularly, should guide this court in circumstances provisions. Because U visas, oftentimes someone will enter the country, be removed, and the government wants to call that person back after they have left the country based on changed circumstances. They want to call that person back to testify in a criminal case. They grant a U visa. And so the government recognizes that changed circumstances is a little different from withholding and CAT and a broad view of asylum. If you read the statutes and harmonize the statutes as the government would like you to, you also will realize that that creates some absurd results. Because if Mr. Laura Aguilar had stayed in the country after he was ordered removed and then there was changed circumstances in his country, he could have then applied for asylum and there is no provision blocking or barring him from doing that. But because he complied with the law and voluntarily removed and left the country and reentered, the government is saying... Well, the reentry wasn't in compliance with the law. Neither was the first entry. That's a felony, isn't it? It is, but most asylum claims... ...by reentering it. Well, most asylum claims, Your Honor, results from illegal entry. And that's because these are people that are fleeing their country. Very often they don't know much about the law and they're trying to get away from persecution. And so most of the asylum claims that are litigated are people that have reentered. And Congress knew that. They knew it because the same day they passed reinstatement, they passed this asylum eligibility statute and created specific exceptions for that. The only way you can get to the government's reading is to accept an argument that Mejia seems to expressly have rejected, which is the view that reinstatement applies literally and bars any and all relief. The government asked for that in Mejia and the court said, no, we're not going to view it that way. We're going to view it as a specific exception to asylum eligibility, as if that statute reinstatement is placed right next to the other three procedural bars that Congress laid out in the asylum eligibility statute. Once you come to that place, then you realize you have to harmonize reinstatement with the changed circumstances provision. In terms of the text, you keep saying that under Mejia, it's sort of slotted in A, B, and, you know, it's a new C, or I guess actually it'd be a new D. As I read Mejia, isn't it likely that what the court was saying is it actually belongs up in one before you even get to the exceptions, that any alien who's physically present in the United States, so long as there's not a reinstatement order, may apply for asylum. I mean, how do we know that it's supposed to come under the exceptions and that it's not more of a categorical exclusion than just sort of a threshold question about what category of aliens are eligible to apply? I think you can look to four places in the opinion. The one is where it says we do not agree with the government that the plain text of reinstatement resolves this issue and it bars all and any relief. The court expressly rejected that argument in Mejia, and then it said, in order to eliminate the contradiction, we construe reinstatement to serve as a specific exception to 1158A1's general grant of eligibility to apply for asylum. Again, the court said, classifying the reinstatement bar as a specific exception to asylum's general grant of eligibility more effectively harmonizes the provisions, and then the court said it a third time. Instead, we must give effect to both statutes and construe reinstatement to be a specific exception to the general asylum eligibility standard, no differently than the other procedural bar. Did it say something like no differently than the other procedural bars? It did not, but if you create... That's the question I'm asking you. Yeah. Obviously, it's an exception, but just, I'm looking at the text. Here's the problem, I'm looking at the text. The exception does not apply to the reinstatement bar. Congress knew how to put it in so that it would have, and it doesn't, so you want us to kind of move that reinstatement bar and put it over next to that exception, and I'm saying I understand that Mejia called it an exception, but how do we know it's under two exceptions and not something that you would just drop in under one as an exception? Yeah. Well, I think because now that the court said it's a specific exception and rejected the government's broader argument that reinstatement is not just read literally, you have to harmonize the two statutes. Once you say reinstatement is a specific exception, it has to now be in the asylum statute. That's how the Mejia court read and harmonized those. Listen, Congress didn't put reinstatement in the asylum provision, but the court in Mejia did because it realized that Congress passed two statutes on the same day that conflicted, and now it's the court's decision about how to reconcile those. Once Mejia reconciled it by creating reinstatement as a specific exception, our view is it makes a lot more sense to then say change circumstances is an exception to the reinstatement bar because it is the more specific of the two provisions. That would harmonize the Mr. Laura Aguilar stayed in the country and had changed circumstances, he would be eligible for asylum, but under the government's reading, the fact that he left and complied with the order of removal, he's now no longer eligible. At the end of the day, Congress made your job kind of difficult because it created these conflicting statutes, and now once you're at that point, it's what do we do from here that's most consistent with congressional intent. And reading the change circumstances as the exception to the exception really comports with the statutory language, including the change circumstances provision, which says an application for asylum of an alien may be considered, then says notwithstanding these other two procedural bars, if the alien demonstrates change circumstances. Reinstatement could apply just like B and C in that statute, and the statute is capacious enough to read it that way and include reinstatement as a specific exception no different from the bar on someone who has not filed within a year of entry and for someone who filed a first but unsuccessful petition who has changed circumstances and then coming back in to file a second. There's no further questions. I'll reserve the rest of my time. Thank you, Mr. Topwood. Let's hear from Mr. George. May it please the Court, Matthew George for the Attorney General. I'd like to start by responding to Petitioner's contention that the reinstatement bar is merely a procedural mechanism that was never meant to affect any right of or impose any burden on asylum claimants. That's actually a misleading quote of the Supreme Court's Fernandez-Vargas decision. When the Supreme Court made that statement in Fernandez-Vargas, they were actually addressing retroactivity. And the complete quote there is, we hold the statute applies to those who entered before ARERA and does not retroactively affect any right of or impose any burden on the Before that statement in Fernandez-Vargas, the Supreme Court, as the Court pointed out in Mejia, said that the reinstatement bar was meant to enlarge the class of illegal re-entrants subject to reinstatement and limit the possible relief available to them. Fernandez-Vargas goes on to say that Congress meant to toe a harder line. And that's exactly what the Court in Mejia pointed to among its other statements regarding the reinstatement bar. And then ultimately held that the interplay between the reinstatement bar, Section 1231A5, and Section 1158, it did not look to any specific subsection. It said generally Section 1158 is unambiguous. Congress intended that aliens subject to reinstated orders of removal be precluded from applying for asylum. The Court has said, again, that Congress's intent was unambiguous and it described it as categorical. That leaves no exception for changed circumstances. Mejia, the Court in Mejia, like almost every other court to consider this issue, has cited Congress's intent to strengthen the effect of the reinstatement bar. Courts have used terminologies such as illegal entry having serious consequences. That's what the Fifth Circuit has said. The Seventh Circuit categorized it as another limitation on the right to re-enter apply for asylum. The Tenth Circuit cited Congress's intent to fortify the effect of the reinstatement provision and wanted it to have real teeth. So this Court is not alone in saying that the reinstatement bar, I believe like Judge Harris has pointed out, is to have serious consequences and to almost be punitive in that it's a categorical bar to asylum relief among other forms of relief. Does the government have discretion not to use reinstatement proceedings? It does, Your Honor, and that has happened. I've worked on cases where the government has agreed to, DHS has agreed to cancel reinstated removal orders and put aliens into regular proceedings under 240 or Section 1228A or 1229A, I'm sorry. Does it ever do it for this kind of reason when a viable asylum claim arises only after the first order of removal? I can't speak to the specific factual circumstances. That certainly, as we pointed out in our brief, that's something that an alien could raise to the DHS officer and say, look, I have this claim that arose after and this is the only time I've been able to apply for it, although kind of backing up and examining Petitioner's statement that he's complied with the law in that he left the country, he's not in the same position as someone who merely remained here after receiving a removal order and then sought to move to reopen or sought to reapply for asylum based on changing circumstances. He's taken the extra step of illegally reentering the United States, which is exactly the conduct that Congress enacted the reinstatement bar to discourage. That's one of the things they were looking at. So is the second part of what you just said to suggest that no, the government would not exercise its discretion to accommodate a sort of post removal asylum claim? I'm not going that far. That's going to be the situation that any alien would be in as they're caught in the United States after having illegally reentered. So now if they're before the DHS officer, that's now the time that they could say, express a desire to apply for asylum. And perhaps that's something the officer would consider. I don't have a specific example of the factual circumstances of that happening. In different circumstances, I have seen them. What kinds of circumstances? I'm just curious. Where there was some questions over the removability in general, and there was an attorney who wanted to make some statements on behalf of the alien who it wasn't unclear if those statements actually made it to the DHS officer for him or her to review. Regarding the first removal or the second? I believe it was regarding the second. It may have actually been in the expedited removal context where someone had reentered. I guess not exactly on all fours. I mean, I don't see every case that comes up. But I know there are opportunities for DHS to consider things other than what's specifically before them. So again, I have not seen this specific factual circumstance where someone has said, I'd like to apply for asylum, and then cancelling a reinstated removal order and putting them into proceedings. But it is a possibility. Other possibilities before an alien decides to legally reenter, the alien could present him or herself at the embassy or consulate in his or her home country and say, I'm a refugee. I'm here to be a refugee. And that would be a way to present an asylum claim and perhaps enter the United States legally as a refugee. Another way would be to present oneself legally at the border and say, I'm here to apply for asylum, which is what the court in Mejia actually recognized, the petitioner in Mejia. Excuse me, that's not. What the court looked at in Mejia was the third option was filing a motion to reopen from abroad. That's a third possibility. Let me back up to the second possibility is present oneself at the border and say, I'm here without illegally reentering. Say, I'm here to apply for asylum. And that's what the third circuit, I believe, recognized was an option for someone in this particular circumstance before they reenter. The third option is what the court recognized in Mejia was to actually file a motion to reopen from abroad and say, now my circumstances have changed. I now have an asylum claim where I didn't before. Please reopen my proceedings. That's something that is allowed to be done. There's a statutory right to a motion to reopen as simply being removed is not a circumstances. The alien is not foreclosed from presenting on their legitimate, legal, lawful ways to do that. But this is not one up. That's correct, Your Honor. Once the alien takes that additional proactive step, sort of self-help of illegally reentering the United States, that's the conduct that Congress intended to prohibit and to attach consequences to. As Judge King pointed out, it's actually a crime to criminally reenter the United States. So it's factually... Could prosecute him and then send him back. Yes, Your Honor. That's one option. In this particular case, the petitioner has received withholding of removal, so he actually won't be sent back, but he could still be prosecuted criminally for his criminal reentry. Your position is Mejia controls here? Yes, Your Honor. Could we give any relief to this fellow without having an in-bank proceeding? No. No, Your Honor. Is that what your position is? Yes, Your Honor. Yes, Your Honor. Mejia controls this question because it announced Congress's intent was unambiguous. That's not the first thing you say when you got up. That's what I was kind of listening for. That's my point, Your Honor. We can't do anything. I mean, the government's position is a panel of this court can't do anything for him. That's correct, Your Honor. But should he wish to raise this issue to the en banc court, that's his option. If he loses, he can file a petition for that. That's correct. He can take it to the Supreme Court. One of us could ask for a poll or something. Any judge could. Yes, Your Honor. Yes, any judge. I believe that's the court's procedure, just to poll the court for rehearing. En banc, that's certainly an option. But that's the only way to overrule Mejia's broad, as they said it, categorical. One panel can't overrule another. Correct, Your Honor. Unless it's distinguishable. Unless this case is somehow distinguishable from Mejia. Yes, Your Honor. We're stuck with that route. I suppose Mr. Hopwood would say that it is distinguishable enough that we got room to do something. But you don't think so. That's correct, Your Honor. Mejia's holding was broad, categorical, unambiguous. Asylum is barred to those with reinstated removal orders. This question is simply a subset of that. One way of looking at it is, as Judge Harris has pointed out, is it's not an exception that's read in Subsection 2. It's a general eligibility in Subsection A1. These are individuals who are simply just not eligible at the initial stage to apply for asylum. So then the exceptions that are found later simply don't apply. And that's consistent with what Mejia said. Again, looking at it a different way, if facts somehow, the facts of the individual petitioner somehow were to change it, Mejia's holding is that this is a categorical bar. So as I'm sure the Court is familiar in the criminal context, when something's categorical, it doesn't matter what the facts are of the case, what this particular person did. We're simply looking at the statute. If that statute is categorical, say an aggravated felony, that's the end of the inquiry. And that's what Mejia has said here, is that this is a categorical bar of asylum to those with reinstated removal orders. That ends the inquiry. The Court cannot go beyond that without overruling Mejia. If it were to say that there is some third or fourth exception for changed circumstances, it would necessarily have to overrule Mejia. And that, as Judge King has pointed out, it cannot do, this panel cannot do. That would be a great question for the Court en banc if the Court chooses to take it there. But that's the only way the Court could find now it's ambiguous regarding changed circumstances and find some exception to the unambiguous categorical intent of Congress to ban asylum. I believe unless the Court has any other questions. I think we understand your argument. Thank you. Mr. Hoffwood, reply. Yes, Your Honor. The government's reading of Mejia, I think, is just wrong. And I want to read the places where I think it's wrong. The government made the same argument before the panel in Mejia, that reinstatement is this broad categorical ban, unambiguous language, bars any and everything. For one point, they don't really believe that because they have also created three exceptions through notice and comment rulemaking for withholding CAT and U visas, even though they're coming to this Court saying reinstatement bars any relief. And the Court said, but we don't agree with the government that the plain text of reinstatement resolves this issue. Because as with those textual arguments, the government's argument falls short because it too fails to square the reinstatement bars prohibition on seeking any relief with the broad grant of asylum eligibility. So the Court had that argument and said, the plain language of reinstatement does not decide this case because it conflicts with another statute. And the question then is how to harmonize these statutes to give effect to everything. And then the Court said three times that it was reading reinstatement as a specific exception to the asylum eligibility statute. The Court did not have a changed circumstances case before it, nor did any of those other circuit courts that have decided this issue. So if the Court today says changed circumstances is an exception to reinstatement, it will be the first Court to say that. You also have to follow the same analysis that the Court in Mejia did, which recognized that, yes, Congress wanted reinstatement to bar certain claims. But also recognizing on the very same day, Congress said, changed circumstances allows for people to seek a second bite at the apple. It's our client's first bite at the apple. And it seems that the only way to resolve those after Mejia is to say that the changed circumstances exception is an exception to reinstatement. The Court did not decide that issue in Mejia. We do not, you do not need to, you're not bound by the panel's decision. If anything, you're bound on the panel's analysis that recognized reinstatement cannot be read literally. It's a specific exception to asylum eligibility. And then go through the general versus specific analysis. If you do that analysis, we should prevail. Because we have a narrower subset of people who are eligible for asylum, under a reinstated order of removal, but then who have changed circumstances that allows them to seek asylum eligibility. So Mejia does not control this case. If anything, Mejia helps our side. Because if you have to find a way to harmonize these two statutes, saying reinstatement is just read literally is not going to do it. Because it brings you right back to the same conflict that the Mejia Court was trying to resolve. Reinstatement was a procedural bar. And once you have read it that way, it should apply no differently than the other procedural bars in the asylum eligibility statute. And it seems really strange that Congress would want to bar claims like my client's, where he had no opportunity to raise an asylum claim in the first instance. I understand that when people re-entry, that's breaking the law. But Congress knew that. Because they allowed for people to seek asylum who have entered illegally. The majority of asylum claims come in through people who have entered illegally because they don't understand they can present a claim if they come to the border. Reinstatement is discretionary. I agree with the government on that. But it's only discretionary in this way. We've only seen the government say we're going to not worry about reinstatement when someone falls under one of the three exceptions that the government has created for reinstatement. That's CAT, withholding, and U visas. Those are the only three places we have ever seen the government exercise discretion. We could not find a case where someone had come in and the person had sought asylum and the government had used its discretion to allow them to seek asylum. And so I don't think that you can count on that as giving effect to the changed circumstances provision. Because if someone doesn't fall under one of the government's three recognized exceptions, they are not going to be allowed and have reinstatement removed and allowed to seek asylum. Okay. Thank you, Mr. Huffingford. Thank you, Your Honor. You're out of time, unfortunately. On behalf of the panel, I want to thank the Georgetown Law Center for undertaking representation of this client. I know you've had to do extra work, particularly after Mejia came out. And we appreciate not only your agreeing to take on representation, but the extra work that you also had to do to maintain your representation. So thank you very much. We'll come down and greet counsel and then go into our next case.
judges: William B. Traxler Jr., Robert B. King, Pamela A. Harris